IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

PGT TRUCKING, INC.,

    Plaintiff,

v.                                                             No. 15-1032

CLAY JONES.

    Defendant.

---

ORDER CONDITIONALLY GRANTING PLAINTIFF'S
MOTION TO DISMISS WITHOUT PREJUDICE

---

Before the Court is the April 27, 2015, motion of Plaintiff, PGT Trucking, Inc. ("PGT"), for voluntary dismissal of the case without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Docket Entry "D.E." 14.) Defendant, Clay Jones, responded, arguing that dismissal is appropriate, but that it should be *with* prejudice, and he should be awarded his litigation costs. (D.E. 19.) Plaintiff has replied, (D.E. 23), and the motion is now ripe for disposition. For the reasons discussed below, the motion will be granted, subject to certain conditions.

**Background**

The following facts are taken from the complaint. PGT, an interstate freight transportation company, has several agents in various parts of the country, including, at one time, Donald L. Mollette. Mollette and PGT executed an agency agreement that prohibited Mollette from soliciting PGT's customers for two years after the end of his contract. It also barred him from acting through another individual to enlist or solicit the services of any independent contractor or owner–operator who had a business relationship with PGT. Jones, a Tennessee

resident, worked for Mollette during his agency relationship with PGT. In his answer, Defendant states that he was not Mollette's employee but provided services to Mollette as an independent contractor. Plaintiff also considers certain information in its possession to be propriety and a trade secret, including information related to its customers, rates, and the owner–operators and independent contractors that work with the company. When this data is on its computer system, PGT protects it with passwords.

At some point, Jones began doing business in competition with PGT. Plaintiff claims that, to facilitate this business, Jones accessed confidential information, perhaps with the assistance of Mollette. Further, PGT states that some of the accessed information was password-protected. According to the company, "Jones . . . used this information to entice owner–operators or independent contractors away from PGT." (D.E. 1 ¶ 17.) The company also avers that Jones used its password-protected information regarding rates and customers to "go into direct competition with PGT" and "to lure accounts away from PGT." (*Id.* ¶¶ 18–19.)

On February 18, 2015, Plaintiff filed suit, claiming that these events constituted a breach of Jones's duty of loyalty to the company and an appropriation of trade secrets in violation of the Tennessee Uniform Trade Secrets Act (TUTSA), Tenn. Code Ann. §§ 47-25-1701 to -1709. PGT now moves to voluntarily dismiss this case without prejudice under Rule 41(a)(2). Jones responded in opposition, stating that the claims should be dismissed *with* prejudice, and he requests fees under the TUTSA or, in the alternative, as a condition to a grant of dismissal.

**Analysis**

I. *Rule 41*

Rule 41(a) of the Federal Rules of Civil Procedure governs voluntary dismissal. Rule 41(a)(2) applies in cases where the opposing party has filed either an answer or a motion for

summary judgment and not all of the parties consent to the dismissal. *See* Fed. R. Civ. P. 41(a)(1)–(2); *Jones v. W. Reserve Transit Auth.*, 455 F. App'x 640, 643 (6th Cir. 2012). Here, Defendant has not agreed to a dismissal, and he has filed an answer to Plaintiff's complaint, (*see* D.E. 11), making Rule 41(a)(2) controlling. In relevant part, Rule 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The decision of whether to grant a Rule 41(a)(2) motion is "commit[ted] to the district court's sound discretion . . . ." *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 477 (6th Cir. 2014). In determining if dismissal will be allowed, the Court must "consider whether permitting voluntary dismissal will cause the nonmovant to suffer 'plain legal prejudice,' as opposed to the 'mere prospect of a second lawsuit.'" *Id.* (quoting *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994)).

## II. Existence of an Absolute Defense

Voluntary dismissal results in "plain legal prejudice," and is therefore improper, "when the law clearly dictates a result for the defendant . . . ." *Id.* (quoting *Grover*, 33 F.3d at 719). When the defendant is clearly entitled to prevail, "it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." *Grover*, 33 F.3d at 719 (citing *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir. 1990); *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 987 (5th Cir. 1989); *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). As Jones contends that the Court may consider the merits of the claim sought to be dismissed, he insists that dismissal of PGT's lawsuit should be with prejudice because its breach of the duty of loyalty and TUSTA claims are "facially invalid and fail as a matter of law." (D.E. 19 at 7.) In making that merits analysis, the standard used by the Court is

whether "the law *clearly dictates* a result for the defendant." *Grover*, 33 F.3d at 719 (emphasis added).

Defendant contends that Plaintiff does not state a valid claim under the TUTSA because the information Jones was alleged to have appropriated did not constitute a trade secret. He raises two arguments to this effect. Since "easily ascertainable information" cannot constitute a trade secret under Tennessee law, Defendant first asserts that "the names of [PGT's] valued drivers [listed] on its Facebook and [T]witter accounts and [in] newsletters publicly available on [its] website" do not equate to trade secrets. (D.E. 19 at 8.) Second, Jones maintains that "PGT does not allege that [he] took any information from [the company] or that he used any information to compete with PGT while he was still working [there]." (*Id.*) He further compares "the rate information and customer relationships [he] remembered" with "an employee's 'remembered information' and relationships with customers" that do not qualify for trade secret protection. (*Id.* at 8–9.)

Jones's assertions regarding PGT's social media activity fall short. Under the TUTSA, information qualifies as a trade secret only if it "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Tenn. Code Ann. § 47-25-1702(4)(B).[1] At this stage, the record does not contain any evidence that PGT actually shared confidential information on social media, and, moreover, Jones does not claim that Plaintiff disclosed any information related to its rates. Even accepting, *arguendo*, Defendant's assertions as true, he has not pointed to any authority that shows he is *clearly* entitled to prevail on this point. In fact,

---

[1] *Hollister, Inc. v. Tran-Sel, Inc.*, 223 F. Supp. 141, 147 (E.D. Tenn. 1963)—the authority that Jones cites in support of the proposition that "easily ascertainable information does not constitute a trade secret"—predates the effective date of the TUTSA by a full 36 years. *See* 2000 Tenn. Pub. Acts Ch. 647, § 11 ("This act takes effect on July 1, 2000 . . . ."). To the extent the standards it applies differ from the TUTSA's requirements, the statute controls. *See* Tenn. Code Ann. § 47-25-1708(a).

4

"[e]ven if [he] could have obtained 'individual pieces of information' by other means, the integration and aggregation of it may be deemed confidential or a trade secret." *Hamilton-Ryker Grp., LLC v. Keymon*, No. W200800936COAR3CV, 2010 WL 323057, at *15 (Tenn. Ct. App. Jan. 28, 2010) (Kirby, J.). Moreover, "certain substantive elements, like reasonableness . . . , are so fact bound that they should normally be reserved for the jury 'unless there is only one reasonable determination possible' based on the evidence produced by the parties." *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461–62 (6th Cir. 2014); *see also Niemi v. NHK Spring Co.*, 543 F.3d 294, 301 (6th Cir. 2008) (applying Ohio's version of the Uniform Trade Secret Act, but recognizing as a general proposition that "whether efforts taken to maintain the secrecy of a trade secret are reasonable under the circumstances depends on the circumstances . . . and that the determination ordinarily represents a question for the jury").[2] Presently, therefore, it would be premature to find that Plaintiff's secrecy measures were insufficient as a matter of law.

Likewise, the Court would act hastily by accepting Jones's reasoning that he relied solely on his memories and existing relationships rather than misappropriating a trade secret. At common law, Tennessee provided protection in some cases to "confidential business information such as customer lists, knowledge of the buying habits and needs of particular clients, and pricing information . . . ." *Hamilton-Ryker*, 2010 WL 323057, at *13 (quoting Douglas F. Halijan, *The Past, Present, and Future of Trade Secrets Law in Tennessee: A Practitioner's Guide Following the Enactment of the Uniform Trade Secrets Act*, 32 U. Mem. L. Rev. 1, 13 (2001)). The TUTSA's definition of a trade secret is more expansive than the standard version of the Uniform Trade Secret Act, and it "is sufficiently broad to include information which at

---

[2] Ohio law uses the same language as the TUTSA in stating that a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ohio Rev. Code Ann. § 1333.61(D)(2).

common law would have been considered confidential information." *Id.* at *14. As Defendant correctly noted, however, "an employee's 'remembered information and relationships with customers'" are typically not considered trade secrets under Tennessee law. *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 961 (M.D. Tenn. 2011) (quoting *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 973 (6th Cir. 2007)). Nevertheless, the complaint specifically alleges that Jones used PGT's confidential information relating to customers, rates, and owner–operators or independent contractors to compete with the company. (*See* D.E. 1 ¶¶ 10–12, 15–19.)[3] In the final analysis, the information may amount to no more than Defendant's memories, recollections, and relationships. On this record, though, the Court cannot make such a determination. The information might ultimately fail to meet the standard for trade secret protection, but the law does not yet dictate a result in Jones's favor regarding the TUTSA claim.[4]

As to the breach of the duty of loyalty claim, Defendant argues that he "had no employment relationship or contractual relationship with PGT that would create a duty of loyalty to [it]." (D.E. 19 at 7.) He further contends that, assuming that a duty of loyalty *did* exist, the TUTSA preempts such a claim because it is "based solely on the alleged misappropriation of trade secrets." (*Id.* at 8.) Accordingly, Defendant maintains that Plaintiff's breach of loyalty claim lacks merit.

---

[3] Although the complaint alleges that Jones, perhaps with Mollette's assistance, used protected information "to go into direct competition with PGT," (D.E. 1 ¶ 18), it is ambiguous as to whether this occurred while Defendant was working for or with the company. However, Jones has pointed to no authority showing that a misappropriation claim requires competition during an ongoing business relationship, and the TUTSA does not appear to incorporate this requirement. *See* Tenn. Code Ann. § 47-25-1702(2) (defining "misappropriation").

[4] Because the TUTSA claim does not fail as a matter of law, the Court cannot presently conclude that PGT brought it in "bad faith," as required for an award of fees to Jones. *See* Tenn. Code Ann. § 47-25-1705; *Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC*, No. 3:12-CV-559, 2013 WL 785938, at *11 (M.D. Tenn. Feb. 28, 2013) ("Tennessee has not defined 'bad faith' under the attorneys' fees provision, but 'other States have concluded . . . that bad faith "requires objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim."'" (alterations in original) (quoting *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008))).

At the outset, whether Jones had an employment or contractual relationship with PGT sufficient to give rise to a duty of loyalty depends on factual disagreements that cannot be resolved at this point in the proceedings. Under Tennessee law, "employees owe a fiduciary duty of loyalty to their employers." *Comm'rs of Powell-Clinch Util. Dist. v. Util. Mgmt. Review Bd.*, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013) (citing *Efird v. Clinic of Plastic and Reconstructive Surgery*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003)), *appeal denied*, (Tenn. Nov. 13, 2013). Jones states that he acted as an independent contractor. (*See* D.E. 11 ¶ 4.) But PGT has never accepted this characterization, and nothing in the record conclusively establishes Plaintiff's status. Defendant, therefore, is not clearly entitled to prevail on this point.[5]

Nonetheless, the TUTSA preempts PGT's breach of loyalty claim. By its terms, the statute "displaces conflicting tort, restitutionary, and other [Tennessee] law . . . providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). It does not displace "[o]ther civil remedies that are not based upon misappropriation of a trade secret," however. *Id.* § 47-25-1708(b)(2). The Tennessee Supreme Court has not yet interpreted the scope of the TUTSA's displacement, but other state and federal courts have applied the "same proof" standard, under which "a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the [T]UTSA." *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004); *see also PartyLite Gifts*, 246 F. App'x at 976 (endorsing *Hauck*); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 963 (M.D. Tenn. 2011) (following *Hauck*); *J.T. Shannon Lumber Co. v. Barrett*, No. 2:07-CV-2847-JPM-CGC, 2010 WL 3069818, at *11 (W.D. Tenn. Aug. 4, 2010) (same); *Ram Tool & Supply Co. v. HD Supply Const. Supply, Ltd.*, No.

---

[5] Accordingly, the Court need not reach the issue of whether, under Tennessee law, an independent contractor owes a duty of loyalty to an entity engaging his or her services.

M2013-02264-COA-R3CV, 2014 WL 4102418, at *12 (Tenn. Ct. App. Aug. 19, 2014) (same). Stated differently, "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Hauck*, 375 F. Supp. 2d at 658 (citing *Smithfield Ham & Products Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 350 (E.D. Va. 1995)).

Courts addressing TUSTA's displacement of duty of loyalty claims under the "same proof" standard have found that a loyalty claim is preempted when the alleged breach is based on a misappropriation of protected information. *See ProductiveMD*, 821 F. Supp. 2d at 964; *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338, at *7 (E.D. Tenn. Aug. 15, 2006), *aff'd*, 246 F. App'x 969 (6th Cir. 2007); *Ram Tool*, 2014 WL 4102418, at *16. To the extent a plaintiff alleges that a defendant has "otherwise engaged in conduct adverse to [its] interests," however, the claim is not preempted. *J.T. Shannon Lumber*, 2010 WL 3069818, at *11–12; *see also Ram Tool*, 2014 WL 4102418, at *17 ("Under *Hauck*'s 'same proof' standard, a common law breach of fiduciary duty/loyalty claim—and its derivative claims—that are not grounded in the misappropriation of trade secrets are not preempted by TUTSA."). Here, although PGT alleges that Jones competed with it, "entice[d] owner–operators or independent contractors away from [the company]," and "lure[d] accounts away from PGT," it has consistently claimed that he "used [the] information" to do so. (D.E. 1 ¶¶ 17–20.) The factual basis for the loyalty claim thus relies on the misappropriation of protected information. Therefore, proving this cause of action would also establish a TUTSA claim, assuming the information actually constituted a trade secret. *See Ram Tool*, 2014 WL 4102418, at *16 ("Under *Hauck*, insofar as Ram Tool seeks to rely upon misappropriation of a trade secret as the factual basis for its common law breach of fiduciary duty/loyalty claim, such claim would,

8

obviously, 'also simultaneously establish a claim for misappropriation of trade secrets,' and therefore, is preempted by TUTSA." (citation omitted)).[6]

PGT maintains, however, that it may alternatively plead the TUTSA and loyalty claims, using the latter as a backstop "if no trade secret exists, [and] a TUTSA claim would not exist." (D.E. 23 at 5.) This position lacks merit under the "same proof" standard. In this framework, "plaintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the [T]UTSA." *Hauck*, 375 F. Supp. 2d at 659. Moreover, *Hauck* expressly rejected Plaintiff's argument:

> A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

*Id.* at 657; *see also Ram Tool*, 2014 WL 4102418, at *13. Understood properly, the TUTSA "creates one class of protected confidential intangible property and provides the exclusive cause of action for theft or misuse thereof." *Hauck*, 375 F. Supp. 2d at 662. PGT specifically alleges misuse of its allegedly confidential information as the basis of its loyalty claim, so TUTSA preemption applies. Because "the law clearly dictates a result" in Jones's favor on this claim, the Court may not "subject him to continued exposure to potential liability by dismissing [it] without prejudice." *Grover*, 33 F.3d at 719. Therefore, the grant of Plaintiff's motion will be conditioned on dismissal *with* prejudice of its duty of loyalty claim. In the alternative, PGT may choose to "withdraw [its] request for voluntary dismissal." *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 575–76 (6th Cir. 2010) (requiring, "where dismissal with prejudice is the condition," that a

---

[6] Although the court in *Ram Tool* eventually concluded that a portion of the plaintiff's duty of loyalty claim was *not* preempted, it did so based on a feature of Tennessee state procedural law that the federal system does not share. *See Ram Tool*, 2014 WL 4102418, at *17.

district court give notice and an opportunity for the plaintiff to withdraw the motion for voluntary dismissal).

III.   Grover *Factors*

As to the remaining TUTSA claim, in *Grover*, the Sixth Circuit also adopted a multifactor test to "determin[e] whether a defendant will suffer plain legal prejudice" from a voluntary dismissal without prejudice. *Grover*, 33 F.3d at 718. Under this test, the Court considers (1) "the defendant's effort and expense of preparation for trial," (2) "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," (3) "insufficient explanation for the need to take a dismissal," and (4) "whether a motion for summary judgment has been filed by the defendant." *Id.* (citing *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir. 1988)); *see also Holston Med. Grp.*, 595 F. App'x at 477 (reaffirming the test). As to the first and fourth factors, Jones does not claim that he has expended substantial effort or incurred great expense in preparation, and he has not filed a motion for summary judgment. At the outset, then, these considerations weigh in favor of dismissal without prejudice.

Jones argues that PGT "fail[ed] to diligently pursue its claims for a preliminary injunction." (D.E. 19 at 6.) The thrust of Defendant's argument is that the company stated that it would seek a preliminary injunction against him, that PGT never actually moved for the injunction or posted a bond for it, and that Plaintiff's "visible lawsuit" has harmed and will continue to harm Jones "with regard to future employment and future business opportunities." (*Id.*) Defendant's reasoning on this point is flawed. The appropriate test under this prong is *not* whether there was *some* delay or lack of diligence; rather, the dilatory behavior must have been "*excessive*." *Grover*, 33 F.3d at 718 (citing *Kovalic*, 855 F.2d at 474). "Not all delay is excessive, and not all litigation choices are the result of a lack of diligence." *Nuovo v. Whitacre*, No.

10

2:10-CV-240, 2010 WL 3825376, at *3 (S.D. Ohio Sept. 28, 2010). Nothing in Rule 65 of the Federal Rules of Civil Procedure or in this Court's local rules appears to require a movant to apply for a preliminary injunction within three months from the lawsuit's initiation—the timeframe Jones's rationale would require. Further, the fact that PGT never posted a bond is irrelevant. The Court has "broad discretion in setting" the amount of any applicable bond under Rule 65(c), *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 400 (6th Cir. 2012) (citation omitted), *aff'd*, 134 S. Ct. 1377 (2014), and such a bond need not be posted until the injunction is actually issued, *see* Fed. R. Civ. P. 65(c); *Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 661–62 (E.D. Mich. 2007); 11A Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 2954 (3d ed. 2013) ("[I]t is settled that security need not be posted at the time interlocutory injunctive relief is applied for . . . ."). The remainder of Defendant's argument addresses the harm he may be caused through the threat of another lawsuit. The "mere prospect of a second lawsuit," however, is insufficient to create plain legal prejudice. *Holston Med. Grp.*, 595 F. App'x at 477 (quoting *Grover*, 33 F.3d at 718). Jones has simply not shown that any delay was excessive. This factor, therefore, does not weigh in favor of dismissal with prejudice.

Additionally, Defendant contends that PGT's explanation for the dismissal "is devoid of substance." (D.E. 19 at 6.) The company stated that it is "seeking a dismissal because [it] has decided to pursue its claims against . . . Mollette before proceeding against Jones." (D.E. 14-1 at 3.) It further maintained that this course of action "may avoid unnecessary litigation costs and expenses, as PGT may sufficiently resolve this claim in its action against Mollette." (*Id.*) Defendant counters that the company has "give[n] no explanation *how* an action against Mollette could possibly resolve" its claims against Jones or "*why* PGT no longer needs to enjoin" him

from competing with the company. (D.E. 19 at 6–7.) While Plaintiff's support for its position might seem minimal, parties seeking dismissal without prejudice need not give exact or detailed reasoning for their actions so long as there is some logical justification, especially when other factors weigh in favor of dismissal without prejudice. *Compare Quiktrak, Inc. v. Hoffman*, 1:05-CV-384, 2005 WL 2465735, at *1–3 (W.D. Mich. Oct. 6, 2005) (finding sufficient the plaintiff's need to dismiss "so that it is not precluded from refiling if additional facts are revealed"), *with Allen v. Abbott Labs.*, 11-146-DLB, 2012 WL 10508, *7 (E.D. Ky. Jan. 3, 2012) (holding that the plaintiffs' explanations were inadequate because they "do not set forth the standard for dismissal without prejudice, do not cite any case law, and do not put forth any facts in support of their position that dismissal without prejudice would be suitable"). PGT's desire to seek a remedy from Mollette before deciding whether to pursue it claims against Jones meets this threshold. This factor, therefore, supports dismissal without prejudice as well. Because all the above considerations weigh in Plaintiff's favor, the Court finds that its TUTSA claim should be dismissed without prejudice, subject to the condition described below.

IV.     *Conditions on Dismissal of the TUTSA Claim*

Rule 41(a)(2)'s language permits the Court to "condition" the grant of the motion on the acceptance of terms it finds appropriate. *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 & n.2 (6th Cir. 2009). The Court's determination of the proper conditions for dismissal is guided by the purpose of the rule—"to protect the nonmovant . . . from unfair treatment." *W. Reserve*, 455 F. App'x at 643 (quoting *Bridgeport Music*, 583 F.3d at 953). "A Rule 41(a)(2) dismissal may be conditioned on whatever terms the district court deems necessary to offset the prejudice the defendant may suffer from a dismissal without prejudice." *Bridgeport Music*, 583 F.3d at 954 (citations omitted).

"[C]ourts frequently award costs and attorneys' fees when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)." *Wagner v. Circle W Mastiffs*, No. 2:08-CV-431, 2010 WL 2640063, at *3 (S.D. Ohio June 29, 2010) (citing *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848, 852 (W.D. Mich. 2007), *aff'd*, 277 F. App'x 530 (6th Cir. 2008); *Luckey v. Butler Cnty.*, No. 1:05CV388, 2006 WL 91592, at *4 (S.D. Ohio Jan. 13, 2006)). "One purpose for such awards is to reimburse the defendant for the litigation costs incurred, in view of the risk faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Degussa*, 471 F. Supp. 2d at 852 (citations omitted). Here, both parties acknowledge the fact that PGT may refile suit against Jones—at least in the event that it is not satisfied with any relief obtained against Mollette. The threat of Defendant incurring duplicative costs and expenses therefore exists.

Under these circumstances, some courts have conditioned dismissal without prejudice upon the plaintiff paying costs, including reasonable attorneys' fees, in the event it refiles a similar action against the defendant. *See, e.g.*, *Jeffries v. Missouri Metals, LLC*, No. 4:13-CV-1921 JAR, 2014 WL 1846305, at *3 (E.D. Mo. May 8, 2014); *Hill v. Ford Motor Co.*, No. 408CV012, 2008 WL 2811309, at *2 (S.D. Ga. July 21, 2008); *McCoy v. Whirlpool Corp.*, 204 F.R.D. 471, 475 (D. Kan. 2001). The Court finds this approach appropriate in this case. Dismissal without prejudice shall be conditioned upon PGT agreeing to pay Jones's current costs in defending this action, including his reasonable attorneys' fees, if it later files a similar action against him. The determination of such costs and fees shall be made at the time of refiling. *See Jeffries*, 2014 WL 1846305, at *3. Alternatively, Plaintiff may choose not to accept this condition, withdraw its motion to dismiss, and move forward with the suit. *See Michigan Surgery*, 627 F.3d at 577.

**Conclusion**

For the reasons stated above, Plaintiff is ORDERED to respond within eleven days from the entry of this order either accepting the conditions imposed by the Court or withdrawing its motion for voluntary dismissal. If PGT accepts the above conditions, the Court will enter an order dismissing its duty of loyalty claim with prejudice, dismissing its TUTSA claim without prejudice, and requiring it to pay the costs, including reasonable attorneys' fees, Defendant incurred in this action in the event it later refiles a similar suit.

IT IS SO ORDERED this 7th day of July 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE